Good morning, and may it please the Court. After the Supreme Court's decision in Burridge, two things remain undeniable. The first is that the term results from in the Controlled Substances Act requires proof of but-for causation, not some lesser standard such as contributing cause that the Eighth Circuit approved of in Burridge. And the second thing that is undeniable is that to instruct a jury in a death enhancement case without mentioning but-for causation only can invite the very sort of error that the Eighth Circuit committed in Burridge. And that means in this case that the jury could have easily concluded that Harden's one-tenth of a gram was simply a contributing cause, not a but-for cause. In essence— Mr. Poore, how do you get from Burridge the command that the instructions to the jury actually have to explain that results from, which is the statutory language, means but-for causation? And I would say beyond that, since only lawyers would talk that way, you know, you would have to explain to the jury what we mean when we say but-for causation. So that's a lot to pack into Burridge, and this district court, Judge Griesbach, taking guidance from other of our cases, thought that maybe just sticking with the statutory language was the better way to go. I mean, was he violating anything? I don't see that in Burridge, frankly. Well, Burridge essentially says that results from equals but-for. So when it comes time to instruct a jury, and you are defending a death enhancement case, the only reasonable instruction that you would insist upon for your client who is facing a death enhancement is that it includes the term but-for that the Supreme Court came out with. Because what you're left with without that is the same situation that caused the Solicitor to make the same mistake, and that is conclude that results from equals a lesser standard. Mr. Poore, I think you're, where your argument gets tough for me when you start to move beyond the, you start to say that there, you know, it was legally required to give definition to the results from, is the fact pattern you have here. I think that argument's much better in a situation where you have a cocktail of potentially toxic substances, and it's really important that the results from language not be interpreted to mean contributing cause, because you're right back into the Burridge problem there. But I just don't know. This is your fact pattern. Well, our fact pattern, it's not a cocktail, but it is this, what matters is not how many drugs the victim took, but is there conclusive evidence of causation, or is the evidence of causation conflicting? That is, was it Hardin's tenth of a gram that caused the death, or was it someone else's? And in this case, this court in the direct appeal has already found that there is that conflicting evidence, that is, the court referred to it in the direct appeal as the jury could have found the opposite conclusion. Even the government's own witness, Dr. Geis, said that had Schnetler taken the heroin, the one-tenth, and the only one-tenth that Peterson delivered at five o'clock, she would be surprised if that would have killed him five hours later. So whether there's one drug or four drugs, as in Burridge, what matters is whether there is a conflict in the evidence of causation, and we have that here. So that's why the but-for instruction was so critical here, because otherwise what you have is a jury is simply going to guess at what the correct standard is. So are you saying that our decision in Hatfield should be reversed or vacated, that it's wrong? Because in Hatfield we said an instruction based on the language of the statute was sufficient. Your Honor, the statement in Hatfield, which was made four years before Burridge. But Burridge also cited Hatfield favorably. Correct. But what Hatfield dealt with was what was probably an easier case, although the district court agreed that but-for should apply, it's the same problem here, is judges or lawyers getting wrong what the meaning of results from was. In that case, the government even argued that playing a part was sufficient, and we know that that can't be. So Hatfield then mentioned in dicta, in qualified dicta at that, that well, maybe like proof beyond a reasonable doubt, results from would be enough. But we know after Burridge it can't be enough, because here's the thing that keeps coming back is that everybody knows what results from means after Burridge. But that's only true for those who read the Burridge decision, and the jury does not get the Burridge decision. So they are left at sea, basically, by not knowing what the true meaning of results from is. So when you're defending a case like this, you have to insist that but-for be included in the instruction. Otherwise, you are putting your client at risk, and you're making the jury essentially guess at what the correct standard is. That is no way to impose a life sentence. And so— Can you think of any case where an instruction such as the one in this case happened and an appellate court reversed and said the jury could have found from this just mere contribution as opposed to without this, no death? Yes. In the best case, it's cited in both our opening and reply brief, and that's the McKay decision from the Tenth Circuit where then-Judge Gorsuch dealt with this issue on remand, which was then a backup into the Tenth Circuit. And in that case, Judge Gorsuch stated very plainly that without the but-for language, a jury could easily have applied the lesser standard. And that's our case. I mean, the fact that there's one drug or two drug, the question is whether there was conflicting evidence of causation. And it's unmistakable in this case when the government's own lawyer is saying that Schnettler may have—she'd be surprised, to put it her way, that he would have died from a tenth of a gram of heroin taken at 5 o'clock. But on that timeline, I mean, of course, there were competing timelines as we discussed. That's correct. But I would say that the contemporaneous evidence, the only contemporaneous evidence, is the text messages. And so the jury could have said, we believe the text messages show that Schnettler took the heroin at 5 o'clock, but still have concluded that it was—heroin was still just a contributing cause. We're back to the same problem. The jury is guessing at what the correct standard is, and that is intolerable, especially when we're dealing with these death-enhanced sentences. Burrage gave the clear path going forward, that a results-from language means but—has to mean but for. And to leave the jury to guess at that is error, it's not harmless error, and it's ineffective assistance of counsel. And I see I'm getting close to my rebuttal time, but that's the essence of it. You are actually in your rebuttal time, so if you would like to stop now, I would. I would, Your Honor. I would ask that the sentence be vacated and the case remanded. All right. Thank you very much. Mr. Funnell. Good morning, and may it please the Court, Tim Funnell for the government. In every trial, after the evidence is closed and the Court and the parties are discussing jury instructions, the given instructions should be drafted based on the facts and the controlling law for that particular case. And that may include adapting pattern instructions and an instruction that would otherwise track the statutory language. Failing to do that in that particular case can mean that counsel was ineffective, but that is not this case. This was not a guilty plea, unlike some of the cases cited in the briefs. This was a trial, and at this trial, defense counsel challenged every aspect of the government's case, whether Mr. Hardin conspired to distribute heroin at all, whether it met the 100-gram drug quantity, whether Mr. Hardin distributed heroin to Mr. Schnettler at all, and whether Mr. Schnettler's death resulted from heroin that Mr. Hardin distributed. There is no allegation here in this 2255 that defense counsel was ineffective regarding the conspiracy conviction or the 100-gram drug quantity, so it's firmly established that he provided effective representation in those respects. There is no allegation in this 2255 that counsel failed to confer with Mr. Hardin regarding medical evidence or failed to advise him or misadvise him regarding medical evidence. If that had occurred, Mr. Hardin certainly could have and would have alleged that in this 2255, since it was within his personal knowledge that those would have occurred. Defense counsel used an investigator here to interview witnesses before trial to look for an alternate heroin source, and then at trial, defense counsel used phone logs, text message logs across the government's lay witnesses, actually introduced the toxicology report into evidence, elicited favorable testimony from Dr. Giese to argue to the jury that there was a competing timeline and that the fatal heroin came from a different source other than Mr. Hardin. Once the government's case was over, defense counsel also called for defense witnesses. Every 2255 involves hindsight, but Hardin's claims here require the distorted effects of hindsight, which is exactly what Strickland says that this court cannot engage in. It's presumed at this point that Mr. Hardin stands fully and finally convicted. There is a stronger presumption here because we're talking about ineffective assistance, and the court's review has to be highly deferential. There's a wide range of professional discretion that's at issue here and accorded to counsel, and prejudice requires substantial, not just conceivable, likelihood of a different result. But Mr. Funnell, let me ask you this. I mean, it is certainly true that what the court opted for was this results from language that is the statutory language, but I find it hard to believe that just because language isn't a statute means it's crystal clear and doesn't require any elaborations in jury instructions. Indeed, we would be out of business practically if all statutes were that clear and they didn't need some further explanation. And so what Mr. Poore is arguing on behalf of Mr. Hardin is that a jury might think results from meant contributed, perhaps along the McKay lines, or it might have meant what Burrage tells us it needs to mean, but for causation. And when counsel didn't object to the instruction, didn't proffer an instruction elaborating on this further, counsel was performing below the standard necessary. Your Honor, my answer to that goes back to the discussion during the opening portion of this argument, which is the facts of this case are not a drug cocktail, multi-drug toxicity case. The facts of this case are not the McKay case where you had, again, multi-drug toxicity and you also had at least one expert in McKay saying that pneumonia was the cause of death. You had no expert in McKay definitively saying what the cause of death was. Here, we have not only the autopsy report, but then we have supplemental testimony subject to direct and cross-examination at trial. And as this panel, or excuse me, as this court set on direct appeal, this was not a multi-toxicity case. This was a single drug case. So that's the first part of the answer. The second part of the answer... Could you explain for me a minute? I mean, there's a challenge to whether that really matters. So when it's a single drug case, do you think it's impossible that somebody might take a dose that experts would regard as a non-lethal dose, but then when you take another dose on top of it, it tips you over the line and you die from it? Why isn't it the same sort of contributing incremental effect that we get with cocktails? Well, my first response, Your Honor, is to say that as Burrage says, and as this court echoed in Barone, that a drug can be a but-for cause when it is the straw that broke the camel's back. So you can have multiple heroin delivered to the same victim and results from is still satisfied. And here, that's what we had. This jury had those facts put to it through direct cross, through text, phone logs, all sorts of evidence. And so it decided the very issue that the court has posed, whether there was a competing timeline here of a different drug that may have caused the death. And results from, as we know from both Hatfield and from Burrage, results from the common ordinary meaning is but-for-cause. So we don't have to suppose or assume or guess, and I think that would be inappropriate, especially in a 20 to 55 with the strong presumptions that are afforded here, that the jury somehow misapplied or misunderstood what is the common meaning. Mr. Fennel, what do you make of the question the jury asked? Well, Your Honor, the jury never tied that question to anything. They never tied the question to any particular piece of evidence. They never tied it to a specific instruction. They simply asked whether we can consider other possibilities that have not been presented. Yeah, were you, did you try the case for the government? I did not, Your Honor. Yeah, I'm curious how the question, I mean, I can recall in trials, jurors sending out questions, you're not sure how to interpret them. Ordinarily, there's a dialogue and sometimes a follow-up question asked to the jury to clarify their note. Anything like that happen here? I'm sorry, in this case, the court called the parties in, they discussed the question and the court asked, how should we answer the question? The defense said that the answer should be clearly, yes, you can consider other possibilities. The government initially said no, thinking that what the question was going towards was facts, not an evidence. But ultimately, the government agreed with both defense counsel and the court that the answer to the question was yes. And then the court gave a follow-on instruction. The jury never asked another question. So I think it would be inappropriate for us to guess what exactly the jury was talking about there. That's fair enough. But why wouldn't a diligent lawyer, in the face of a question like that, why wouldn't a lawyer have said, of course you can consider other possibilities, but let's be clear on what the law requires with respect to causation? Go ahead. I'm sorry. The jury instruction itself already said results from. The jury comes back with a question and all the testimony and the facts that the expert testimony, et cetera, they had fully litigated that issue. The jury comes back with a singular question that's not tied to any particular instruction or piece of evidence. So I don't think a reasonable lawyer would necessarily say that, oh, they must be talking about the results from. And so we need to clarify that. Again, the common ordinary meaning of results from is but for cause. That was what this court said in Hatfield. That's what the Supreme Court said in Burridge. So, Mr. Funnell, even if this wasn't ineffective assistance, do you think the jury instruction as is is fine? Or do you think in light of Burridge, the jury instruction should be something different and focus on but for? That's why when I opened my comments today, Your Honor, I said that in an appropriate case that it is absolutely incumbent upon the court and the parties to figure out what is the best way to draft the jury instruction in this case. So there could be a case, certainly, where it's necessary to go beyond results from. I see that I'm out of time. I could just finish answering the judge's question. Thank you, Your Honor. So I fully acknowledge that the instruction can be and should be adapted to the particular facts of the case. But the law at the time, and quite frankly, even the law now, we haven't had a single case decided in this circuit or the Supreme Court that has held what the defense is saying here, that but for, the phrase but for needs to be in a jury instruction. We don't have a pattern instruction in this circuit that says that. We don't have a consensus from the other circuits that say that. So yes, the jury instruction can and should be adapted as necessary, but this is not that case. Thank you. All right. Thank you, Mr. Funnell. Mr. Poore, you have, I'll give you a minute. Thank you, Your Honor. Two points. The government asked this court to continue to assume that the jury should have known what results from meant, that is, it was a but for test. How could they have done that? The jury cannot be presumed to do what the Solicitor General and the Eighth Circuit was unable to do in Burrage. They never have the Burrage case. We have to assume that they would be confused in the same way. And that kind of confusion is the reason that an instruction without but for after Burrage was error. And what is more, that the government here does not contest that the evidence of causation in this case was conflicting, even if it was a single drug case. The court on direct appeal made very clear that the jury after, could have reached the opposite conclusion. That was after surveying all the evidence of the case. So when you put this together, it is error not to permit, not to have a instruction that includes but for in a death enhancement case. So again, we ask that Mr. Harden's sentence be vacated and that the case be remanded. All right. Thank you very much. Thanks to both counsel. We will take this case under advisement.